Taking under advisement, the court will proceed to the fifth case, O'Quinn v. Spiller, Mr. Parsons. Thank you, Your Honor. May it please the court. Ryan Parsons on behalf of Plaintiff Appellant Chester O'Quinn. Mr. O'Quinn was arrested on October 31st, 1997 and did not stand trial until April 2nd, 2001. That's more than 42 months, or 1,249 days. Throughout this time, Mr. O'Quinn's requests for a speedy trial were ignored by the court, by the prosecutor, and even by his own defense counsel, who collectively approved and requested 28 continuances with no justification for them, no acknowledgement that they even considered Mr. O'Quinn's speedy trial requests, and nothing in the case file to suggest that anything was going on to move the case toward trial during this three-and-a-half-year period. If the Sixth Amendment is to mean anything, it must mean that Mr. O'Quinn's rights here were violated. The state court decision rejecting Mr. O'Quinn's speedy trial defense unreasonably applied clearly established federal law under AEDPA and was also based on an unreasonable determination of the facts. The controlling Supreme Court precedent in this case is Barker v. Wingo and the various cases interpreting that. As the court surely knows, the Barker v. Wingo has a four-factor test that looks at the length of the delay between indictment and trial, the reason for the delay, the defendant's assertion of his rights, and the prejudice to the defendant. The state court's erroneous analysis affected at least three of those four factors. First, with respect to the length of the delay, the Doggett case acknowledges that the length of delay is a double factor, a double inquiry. First, it's a triggering mechanism that is a gateway to even looking at the other three factors. But second, it's an independent factor in and of itself. In this case, the court acknowledged the triggering mechanism. It said the delay was in excess of the presumptively prejudicial one-year delay, but it didn't acknowledge how much in excess it was. In this case, three and a half years, more than triple the time required for the triggering factor. The court didn't weigh the additional excess at all in its opinion. Second, looking at the reason for the delay, even if there is no clearly established federal law as issued by the Supreme Court, they can completely shift blame to the government here or to the state. It is clear, and it was clear at the time the state court issued its decision, that it should have factored Mr. O'Quinn's repeated assertion of his rights here, and the defense counsel's completely ignoring those requests. Well, the state appellate court noted that as part of the fact pattern in the case, right? It noted that Mr. O'Quinn asserted his rights. That's correct. But what it didn't do is, under this reason or whose fault it was factor, it didn't factor that in at all. And going back to Barker, it talks about a continuum. On one hand, you have if the government is intentionally delaying a trial to prejudice the defendant, that's weighed obviously very heavily against the government. More towards the middle, you have the government's negligence or unwillingness to push the case forward. It's still weighed against the government, but it's not weighed as strongly. On the far other hand, you have a case where the defendant is actively sabotaging his case, like the Vermont v. Brillen case where the defendant is threatening to attack his attorney, moving to dismiss his attorney immediately before trial, things like that. But then the Barker court also acknowledged that in between that, there is this area where this factor is weighed less against the defendant if he's not aware that the defense counsel is making these continuances or delaying trial. He's not doing it in coordination with them. Here we go even further than that from Barker where he was actively working against his client's wishes. So if the defendant's not knowing about the continuances. How do we know that? We have two pro se filings, right? That's correct, Your Honor. And we don't have any hearing on those filings? We have nothing. All that's in the record from shortly after the arrest to shortly before trial are 28 continuances and Mr. O'Quinn's requests. The appellate court seemed to say that all the continuances were at the feet of the defendant. The state concedes perhaps five months. So we have a suggestion at least that the majority of these 42 months, 37 months, are attributable to actions of defense counsel. I think it's undisputed that five months should fall at the feet of the state. I don't think that's reasonably undisputed. But the bulk of the time still is attributable to counsel. So is your argument that there should have been an inquiry with regard to those two pro se applications or suggestions that counsel? Absolutely, Your Honor. Or at least some indication that the parties at least consider these requests. Has there been any inquiry of defense counsel? So it wasn't before the state appellate court. But Mr. O'Quinn actually did do a number of other things. He filed a complaint with the Illinois Attorney Registration Disciplinary Commission. He sent pro se discovery requests directly to the state and to the prosecutor because he concluded I must be representing myself because my attorney hasn't been in contact with me. And he wrote letters to his senator. But with respect to the disciplinary complaint he filed, there was a response from the head of the Madison County Public Defender's Office where they basically admit that they were trying to conjole him to accepting the government's plea offer. It's in the district court petition that Mr. O'Quinn filed pro se, but it's not at the record here. But what it said was- Well, that indicates, does it not, communication between counsel and defense counsel? No, Your Honor. This was he complained to the disciplinary commission. The head of the Madison County Public Defender's Office responded to that complaint, and that response got to Mr. O'Quinn. And that response indicates the defense counsel was seeking to- Well, I can actually tell you what the- There be a plea. They were trying to pressure him to take the plea. I don't- Well, whatever. I don't want to characterize it, but there's communication obviously then, right? He says no. What the record says is through pleading, maneuvering, and cajoling, we have kept the case from trial with the hope that the defendant will not throw the rest of his life away, which he is in real danger of doing. As we do not lack for trial work, we just keep pushing this case off. The continuation of this case is consistent with the workload and docket management of the court in this office. It is also a valid tactic in dealing with the state. Lastly, and most importantly, it is in the client's best interest. So certainly the defense counsel believed that Mr. O'Quinn should take this plea, but Mr. O'Quinn repeatedly asserted that he did not want to. He wanted to go to trial, and it was completely ignored. Where was he incarcerated at the time? Was it the county jail? Your Honor, he was certainly in state prison. I'm sorry? He was either in county jail or state prison. I'm not certain. Was it the same community where the lawyer is from? I don't know the answer to that, Your Honor. In his pro se request to the court, and again, take this for what it's worth, he said he hadn't spoken to Mr. Hawkins, his trial counsel, since December 1997. This is a couple of years down the road. I have no idea whether or not that's true or not, but that's certainly what he said. And it's consistent with the state court record, which shows no consideration of his repeated requests. Any representation in the state court record by defense counsel as to these pro se applications? It didn't get into the record. Again, the State Appellate Court hypothesized a reason for the delay, and it noted a quote from the trial itself where the defense counsel said something to the effect of, we've been trying to get him to take this offer, and it's been sitting out there. Well, it's not uncommon for defense counsel, at least it's my understanding, to not press for trial and have time accumulating custody, as you're aware, Mr. Parsons, and then suggest that there's a period of time to negotiate. Right. No doubt about it. And so on the other side of that, there's also the potential, is there not, that in that process, which arguably might be very responsible action by a defense counsel, you get an impatient defendant saying, I want to go to trial. But does he ask for new counsel in these proceedings? He did. After six months, he asked for a new counsel to move his case forward, and again, two years down the road, he asked to. And the Circuit Court of Madison County just does not. There's nothing in the record to suggest they even considered his request to either move the trial forward or to dismiss his counsel. Absolutely nothing. Just one continuance after another. Is there any immediate follow-up after those two individual applications? By Mr. Oquin? Yeah. He did these other extra record things that I talked about, but nothing else as far as I know with the court aside from these pro se requests that didn't get into the court record. I see I'm into my rebuttal time. Unless the court has any other questions, I'll reserve the remainder of my time. Thank you, Mr. Parsons. Mr. McLeish? May it please the court, counsel, I'm Assistant Attorney General Brian McLeish on behalf of the respondent. I think the first thing to do here is to state what claim is on the table, and that's only a speedy trial claim. There's no ineffective assistance of counsel claim here. There's no right to self-representation claim here. And the state appellate court reasonably applied federal law in holding that if delay is attributable to defendant's counsel, it's attributable to defendant. That was the rule in place at the time of the appellate court's decision, and that rule was confirmed in Vermont against Berlin. At the time the appellate court decided Mr. O'Quinn's appeal, we had New York against Hill, which said that the decision to ask for a continuance is a matter of trial strategy that's left up to counsel. And this is just like the decision to impeach or cross-examine a witness, the decision to stipulate to certain evidence, the decision to exclude a juror, the decision to request a lesser included offense instruction. Often counsel and the defendant will disagree about the right approach here. Mr. McLeish, what did the defense counsel support his petition for continuance with any argument? Nothing in the record, Your Honor. So there may have been off-the-record discussions. It was just a straight request a continuance period. As far as the record reflects, Your Honor. However, we do know that counsel was doing things during this time. So we know that, for one, counsel was actually negotiating plea deals because the letters that counsel referenced, in one of them the state's offers is an open plea to second-degree murder, which would come with a six- to 20-year sentence. There's strong reason to believe that petitioner would have gotten the long end of that sentence, given the nature of his crime, the previous indications of child abuse. And that was ultimately the final offer before trial was a 10-year sentence. What was his record prior to this charge? There had been investigations of child abuse. This came out only at sentencing, not at trial. But there had been investigations of petitioner for child abuse of his own children in the early 90s. And that goes to also one of petitioner's claims of prejudice, is that his ex-wife or his estranged wife would have testified on his behalf. However, had she done so, she would have been forced to testify on cross-examination about. Well, that argument really isn't being pressed in the federal case. It was that issue. Yes, correct. Okay, so the appellate court reasonably concluded that the trial counsel's motivation didn't matter under federal law. And that's because trial counsel is presumed to be acting in client's best interest. Even if he's not acting with client's wishes, as is often the case, he's acting in client's best interest. And the trial judge is not supposed to be the arbiter of trial strategy. So if counsel and defendant disagree about trial strategy, we don't go to the trial judge and let the trial judge make a record of what strategy is and why counsel is choosing this strategy over the strategy that defendant prefers. Well, right. That might make a difference if this were an ineffective assistance of counsel claim. But it's not. It's a speedy trial claim. Yes, correct. And the court and the state have an obligation to bring the case on speedily for trial, right? They do have that obligation. Mostly the latter. It's the state's obligation to bring the case to trial. And what we have here is essentially a claim of state acquiescence in an extremely long delay. And I don't know that that's been litigated before, which probably forecloses this claim under AEDPA. But let's just deal with it as a matter of first impression. This is state acquiescence in a three and a half year delay in bringing a case to trial. So it's presumptively prejudicial. It's presumptively a speedy trial violation, right? So no, Your Honor. That's a speedy trial clause violation. No, Your Honor. That triggers the analysis. So three and a half years of delay does trigger the analysis. Yes, correct, Your Honor. However, Vermont against Berlin, which was not decided at the time of the appellate court, but it's still part of clearly established federal law, says that, yes, the trial court and, yes, the state have the responsibility to move things along, but not when counsel is requesting the continuances. When counsel fails to move the case along, as Berlin says. Well, that case was really egregious, though the defendant himself was obstructing. We don't have any of that here. In fact, we have quite the opposite. So I'm not sure that that decision has the force that you're pressing it on us with. So correct, Your Honor. The defendant's actions in that case were different. However, the rule that the Supreme Court espoused doesn't account for those facts. It says that when trial counsel fails to move the case along, that can't be attributed to the state, unless there's a systemic breakdown in the public defender system. And that makes sense because the state is responsible for funding and making sure that the public defender system is running. However, once counsel is acting in his client's best interest, or, yes, counsel is acting in his client's best interest, the state is under no obligation to force trial counsel to change its strategy, even if trial counsel and the defendant disagree about what the best strategy should be. Mr. McLeish, I'm not sure I disagree with that analysis. However, what do we do with these two requests for counsel change? I mean, does that impact the analysis at all? No, Your Honor. That would impact the analysis if we had a right to choice of counsel claim or a right to self-representation claim. He never actually says he wants to represent himself. He wants a special attorney. So if we had those claims He wants to fire counsel. He wants to fire counsel. And so if we had an ineffective assistance claim, that might be relevant. And then we'd open up another can of worms with the fact that there's no strickland prejudice here and it's not a chronic violation. But unless and until there's such a claim, then we don't look to trial counsel's motivations for counsel's strategic decisions. And when counsel acts on his client's behalf, that decision is attributed to the client. I don't think there's, for me, a problem, a burden on the state for extended times on the delay, although presumptively we've got that, we're in that zone with this much time. But I'm more focused on whether or not there should have been judicial action. Not necessarily favorable to defendant. The defendant here may have been represented by an extremely diligent and able counsel, for all we know. Seeking to get, in a difficult case, a reasonable sentence. There's reason to believe that. In fact, even the dissent in the state court stated that it thought counsel was doing a good job. However, I would caution the court to create a rule where the trial court may be the arbiter of defense's trial strategy. And this would be the only situation which I could think of in which the defendant's strategy should be to evaluate it in any way and make a judgment or force counsel to explain himself about a matter of trial strategy before the fact. Now, if it's ineffective assistance claims, that's a whole other game. That might be a real challenge to make an ineffective assistance claim if the defense lawyer is actively trying to negotiate a reasonable plea. As it should be, Your Honor. And the application to make the record already exists under state law, doesn't it? Pardon me, Your Honor. For the continuous? Yes, Your Honor. However, that's not. And that was violated? So, yes. So there is case law. Statutory law. Yes, there's statutory law. However, the affidavit requirement is left sometimes, at least some state appellate courts have held that it's left to the discretion of the trial judge. However, that state law is not a constitutional rule. Right. No, I can understand. Yes. Yes. Of course you know that. Okay. Unless the court has any further questions, we ask you to affirm the district court. Thank you, Mr. McLeish. Mr. Parsons. Thank you, Your Honor. Just a couple points. No, the state law violation isn't a federal constitutional law violation, but it's further evidence that this was not a routine matter of trial strategy. This was them just pushing it off and pushing it off and pushing it off. Without any evidence in the record, they were actively preparing for trial. Well, it's not. Go ahead. It's not the other way either. Correct. Except that Mr. O'Quinn was repeatedly requesting to move to trial. That is the only evidence that's in the record. He doesn't have to give away his strategy for doing so. At some point, the principle that the defense counsel is in charge of trial strategy has to yield to the petitioner's right. Otherwise, he could still be in prison today and have not gone to trial. I mean, this could have gone on for 20 years and just 100 continuances. Well, the judiciary has a responsibility for overseeing its own operations as well, so apart from that. That's correct, Your Honor, if I may conclude. Of course. Three and a half years has to trigger that obligation on the part of the state to bring the case to trial. It wasn't done here. Mr. O'Quinn's repeated requests were ignored. Therefore, we request that the court grant a petition of habeas. Thank you, Mr. Parsons. Thank you, Your Honor. Please. Mr. Parsons, you were appointed in this case along with the counsel from your firm, and we have the additional thanks to the court for accepting this appointment. Thank you, Your Honor. The case is taken under advisory.